# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELMAR FALLS,<br><br>       Petitioner,<br><br>    v.<br><br>GAIL LEWIS, et al.,<br><br>       Respondents. | 1:02-cv-6107-OWW-TAG HC<br><br>REPORT AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Doc. 1) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## **PROCEDURAL HISTORY**

Petitioner is in custody of the California Department of Corrections serving an indeterminate sentence of 25 years-to-life pursuant to a judgment of the Superior Court of California, County of Kings (the "Superior Court"). On January 17, 1996, Petitioner was convicted by jury trial of possession of marijuana while confined in state prison. (Cal. Pen. Code § 4573.6). (Clerk's Transcript on Appeal ("CT"), 110). The jury also found that Petitioner had suffered two prior "serious" or "violent" felonies that qualified as strikes under California's "Three Strikes" law (Cal. Pen. Code §§ 667(d) & (e)). (CT 183-184). On February 15, 1996, Petitioner was sentenced to an indeterminate term of 25 years-to-life with the possibility of parole. (2/15/95 RT 9). At the sentencing hearing, the trial court indicated that it had "no sentencing discretion" under the Three Strikes law, although the court recognized it had the power to declare the law unconstitutional. (Id. at 8-9).

1    Petitioner subsequently filed a direct appeal in the California Court of Appeals, Fifth

2    Appellate District (the "5th DCA"), raising, inter alia, various challenges to his Three Strikes

3    sentence. (Doc. 14, Exh. A).  On August 6, 1997, the 5th DCA, in an unpublished decision, affirmed

4    Petitioner's conviction, but remanded the case to the trial court for reconsideration of the sentence

5    pursuant to People v. Superior Court (Romero), 13 Cal.4th 497 (1996)(holding that state trial courts

6    retain discretion to dismiss prior "strike" convictions in the interest of justice) .  (Doc. 14, Exh. B,

7    p. 6).

8    On December 8, 1997, the Superior Court reconsidered Petitioner's sentence but declined to

9    strike either of Petitioner's prior "strike" convictions and left his sentence unchanged.  (Supp. CT

10   and RT 23-44).  On April 21, 1998, Petitioner filed a state habeas petition in the 5th DCA,

11   requesting relief from default because he had not filed a timely notice of appeal from the

12   reconsideration hearing.  On July 21, 1999, the 5th DCA granted the petition and directed the Kings

13   County Clerk to receive and file any notice of appeal submitted by Petitioner.

14   After obtaining permission to file a belated appeal, Petitioner filed an opening brief on

15   December 13, 1999.  (Doc. 14, Exh. C).  In this second appeal, Petitioner raised two issues: (1) abuse

16   of discretion by the trial court in refusing to dismiss a prior "strike"; and (2) Petitioner's Three

17   Strikes sentence constitutes cruel and unusual punishment under the Eighth Amendment.  (Id.).  On

18   January 19, 2001, the 5th DCA affirmed the judgment.  (Id., Exh. D).  On February 20, 2001,

19   Petitioner filed a petition for review in the California Supreme Court.  (Doc. 14, Exh. E).  On March

20   28, 2001,  the state supreme court denied Petitioner's petition for review.  (Doc. 14, Exh. E).

21   On November 26, 2001, Petitioner filed another state habeas petition in the California

22   Supreme Court.  (Doc. 14, Exh. F).  Petitioner appears to have alleged six grounds for relief.  (Id.).[1]

23   On July 10, 2002, the petition was denied.  (Doc. 14, Exh. F).

24   On September 12, 2002, Petitioner filed the instant petition, raising two grounds for relief:

25   (1) cruel and unusual punishment under the Eighth Amendment; and (2) unconstitutional

26   _____

27        [1]The introduction to Petitioner's state habeas petition appears to identify eleven separate issues.  (Doc. 14, Exh. F.,
     pp. 1-2).  However, in the body of the document, Petitioner has included six separate sections, each with its own heading.

28   Since many of the initial issues are subsumed within the separate sections, the Court interprets the document as presenting
     six grounds for relief.

1  disproportionality between the sentence given here for possession of marijuana by an inmate versus

2  possession of marijuana by a non-inmate.  (Doc. 1).  In a separate brief filed with the petition,

3  Petitioner appears to raise seven grounds for relief: (1) cruel and unusual punishment; (2) failure to

4  dismiss a prior strike conviction; (3) insufficient evidence to establish the prior convictions; (4)

5  ineffective assistance of appellate counsel; (5) use of one prior "strike" as an enhancement violates

6  the plea agreement in that case; (6) the prosecution violated the plea agreement in the prior "strike"

7  by charging it as an enhancement; and (7) due process is violated by the disproportionate sentence.

8  (Doc. 14).   In the body of the brief, however, the last issue is not raised separately but appears to be

9  implicit in the initial Eighth Amendment issue.

10        Respondent's answer was filed on March 18, 2003.  In that response, Respondent chose only

11  to respond to the two issues raised in the body of the petition itself.  (Id.).  On April 29, 2003,

12  Petitioner filed a document entitled "Petitioner's [sic] Mr. Falls Exhibits A Through D."  (Doc. 18).

13  Although denominated as exhibits, the document, in addition to exhibits, also contains twenty pages

14  of legal argument.  Thus, the Court construes it as Petitioner's Traverse.  In his Traverse, Petitioner

15  contends that he raised all eleven issues contained in his original state court habeas petition and that

16  Respondent failed to address nine of those issues.

17        Respondent concedes that the two grounds for relief that Respondent addressed in the

18  Answer have been fully exhausted.  (Doc. 14, p. 3).

19                              **SCOPE OF HABEAS REVIEW**

20        As a preliminary matter, the Court must determine precisely how many issues Petitioner has

21  actually raised in these proceedings.  Petitioner's filings have been, at best, confusing, and

22  Respondent's failure to respond to all of the arguments presented herein, while unfortunate, is

23  understandable.  As mentioned, the habeas petition itself contains only two grounds for relief: (1) the

24  Eighth Amendment "cruel and unusual punishment" argument; and (2) the disproportionality

25  argument based on the disparity between a drug possession conviction for an inmate versus non-

26  inmate.  Respondent's answer addresses those two issues.  That much is clear.

27        Petitioner attached to the petition a 74-page "brief" containing the seven additional

28  arguments mentioned in the previous section.  These seven grounds are listed as headings following

the Table of Contents.  However, in the body of the document, Petitioner has only six separate

sections, addressing each of the issues except disproportionality, which the Court assumes is

subsumed within the two arguments raised in the body of the petition.  Moreover, one other issue,

i.e., cruel and unusual punishment, repeats the first issue raised in the body of the petition itself,

leaving, essentially, five "new" issues that are raised in the supporting brief.

Petitioner argues in his Traverse that he has raised in these proceedings the same *eleven*

issues he claims he raised in state court habeas proceeding.  Such a claim, however, simply cannot be

maintained.  Although the "briefs" Petitioner submitted in this case and in the state habeas

proceedings are nearly identical, a careful reading of the body of those documents themselves does

not support a conclusion that eleven separate issues are raised.  Rather, several issues are simply re-

statements of each other while other issues are variants of the same arguments.  In construing

Petitioner's claims, the Court will be guided by Petitioner's own use of headings and subsections to

establish which issues are intended by Petitioner to be stand-alone grounds in this petition.  Using

that approach, the Court concludes that Petitioner has raised seven issues–the original two issues in

the body of the petition and the five "new" issues contained in the supplemental brief.

The next issue is whether these grounds for relief have been exhausted.  Respondent

concedes that the original two issues in the petition are fully exhausted.  The five "new" issues,

although not addressed by Respondent, also appear to be fully exhausted.  A petitioner who is in

state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas

corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The exhaustion doctrine is

based on comity to the state court and gives the state court the initial opportunity to correct the state's

alleged constitutional deprivations.  Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546

(1991);  Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198 (1982); Buffalo v. Sunn, 854 F.2d 1158,

1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a

full and fair opportunity to consider each claim before presenting it to the federal court.  Duncan v.

Henry, 513 U.S. 364, 365, 115 S.Ct. 887 (1995); Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509

(1971); Johnson v. Zenon, 88 F.3d 828, 829,  (9th Cir. 1996).  A federal court will find that the

1    highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented

2    the highest state court with the claim's factual and legal basis. Duncan, 513 U.S. at 365 (legal basis);

3    Kenney v. Tamayo-Reyes, 504 U.S. 1, 8, 112 S.Ct. 1715, 1719 (1992) (factual basis), superceded by

4    statute as stated in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1549 (2000).

5         Additionally, the petitioner must have specifically told the state court that he was raising a

6    federal constitutional claim. Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669

7    amended by Lyons v. Crawford, 247 F.3d 904 (9th Cir. 2001); Hiivala v. Wood, 195 F.3d 1098,

8    1106 (9th Cir. 1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir. 1998).

9         Here, Petitioner raised the five "new" arguments in the California Supreme Court in a state

10   habeas petition that was eventually denied. (Doc. 14, Exh. F). Accordingly, the issues are fully

11   exhausted.

12        Based on the foregoing, the Court will address all seven of the issues it has deemed raised

13   and herein and fully exhausted in state court by Petitioner. The Court will not, however, separately

14   address all eleven issues purportedly raised by Petitioner in the petition and supporting brief.[2]

15                              **FACTUAL BACKGROUND**

16        The Court adopts the Statement of Facts in the 5th DCA's first unpublished decision:

17   > On February 26, 1995, as correctional officers were about to enter Fall's cell to
18   > conduct a search, Falls swallowed six balloons. After Falls passed the balloons the
     > contents were examined and found to contain a combined total of approximately 6.34
19   > grams of marijuana.

20   > At Fall's sentencing hearing on February 15, 1996, defense counsel asked the court
     > to find that a sentence of 25 years to life for the instant offense was cruel and unusual.
21   > In ruling on the motion, the court first stated that "in this case the court has no
     > sentencing discretion except as to the issue of restitution fine." Subsequently it stated
22   > that it recognized that it had the authority to declare a punishment unconstitutional but
     > found that Fall's sentence was not unconstitutional.

23   (Doc. 14, Exh. B, p. 2).

24   ///

25   ///

26

27   _____

28        [2]As a practical matter, the Court has addressed herein all of those issues within the discussions of the seven grounds
     for relief that the Court deems properly raised.

**DISCUSSION**

**I.  Jurisdiction.**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7, 120 S.Ct. 1495 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kings County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).  Accordingly, the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997),  overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 1059 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed on September 12, 2002, after the enactment of the AEDPA, and thus it is governed by the AEDPA.

**II.  Legal Standard of Review.**

A petition for writ of habeas corpus under 28 U.S.C. 2254(d) will not be granted unless the adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71, 123 S.Ct. 1166 (2003);  Williams v. Taylor, 529 U.S. at 412-413.

The first prong of federal habeas review involves the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1).  This prong pertains to questions of law and mixed questions of law and fact.  Williams v. Taylor, 529 U.S. at 407-410;  Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2004).  A state court decision is "contrary to" clearly established federal law "if it

1   applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it

2   confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but

3   reaches a different result." Brown v. Payton, 544 U.S. 133, 141, 125 S.Ct.1432 (2005), citing

4   Williams v. Taylor, 529 U.S. at 405.  A state court decision involves an "unreasonable application"

5   of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the

6   facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. at 141.  Consequently, a

7   federal court may not grant habeas relief simply because the state court's decision is incorrect or

8   erroneous; the state court's decision must also be objectively unreasonable.  Wiggins v. Smith, 539

9   U.S. 510, 511, 123 S.Ct. 2527 (2003),  citing Williams v. Taylor, 529 U.S. at 409.  Section

10  2254(d)(1)'s reference to "clearly established Federal law" refers to "the holdings, as opposed to the

11  dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."

12  Williams v. Taylor, 529 U.S. at 412; Lockyer v. Andrade, 538 U.S. at 412; Barker v. Fleming, 423 F.

13  3d 1085, 1093 (9th Cir. 2005).

14          The second prong of federal habeas review involves the "unreasonable determination" clause

15  of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings.

16  Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322m 123 S.Ct. 1029

17  (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of

18  the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the

19  facts in light of the evidence presented in the State court proceeding."  Wiggins v. Smith, 539 U.S. at

20  520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a

21  "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the

22  judgment").  A state court's factual finding is unreasonable when it is "so clearly incorrect that it

23  would not be debatable among reasonable jurists."  Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-

24  1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038, 125 S.Ct. 809 (2004).  The

25  AEDPA also requires that considerable deference be given to a state court's factual findings. A state

26  court's factual findings are  presumed to be correct, and such presumption of correctness may be

27  rebutted only by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

28  ///

1    To determine whether habeas relief is available under § 2254(d), the federal court looks to

2   the last reasoned state court decision as the basis of the state court's decision.  Robinson v. Ignacio,

3   360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's claims on the

4   merits but provided no reasoning for its decision, the federal habeas court must independently review

5   the record to determine whether habeas corpus relief is available under § 2254(d).  Himes v.

6   Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 981-982 (9th Cir.

7   2002).  Where the state court denied the petitioner's claims on procedural grounds or did not decide

8   such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court

9   must review the petitioner's 's claims de novo.  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir.

10  2002).

11  **III.  Review of Petitioner's Claims.**

12      The instant petition itself alleges the following as grounds for relief:

13  **Ground One**        **Petitioner's sentence of 25 years to life for possession of**
14                        **marijuana in prison violates the prohibition against cruel**
                          **and unusual punishment under the Eighth and**
15                        **Fourteenth Amendments.**

16  **Ground Two**        **Petitioner's sentence of 25 years to life violates equal protection and**
                          **due process in that it is much harsher than sentences for someone**
17                        **convicted of a simple drug possession offense.**

18  **Ground Three**      **The trial court abused its discretion in refusing to strike one of the**
                          **prior "strike" convictions.**

19  **Ground Four**       **Petitioner's due process rights were violated when the trial court**
20                        **found the attempted burglary conviction to be a "strike."**

21  **Ground Five**       **Petitioner has a state and federal due process right to be put in a**
                          **drug treatment program.**

22  **Ground Six**        **Ineffective assistance of appellate counsel.**

23  **Ground Seven**      **Petitioner's due process rights were violated by the enhancement of**
24                        **his sentence with a prior conviction resulting from a plea agreement**
                          **in that the plea agreement did not provide for a subsequent**
25                        **enhancement.**

26  ///

27  ///

28

1

**Ground One**        **Petitioner's sentence of 25 years to life for possession of marijuana in prison violates the prohibition against cruel and unusual punishment under the Eighth and Fourteenth Amendments.**

2

3        Petitioner first contends that his sentence of 25 years-to-life violates the federal prohibition

4 against cruel and unusual punishment contained in the Eighth Amendment to the United States

5 Constitution.  (Doc. 1, p. 5).  This contention is without merit.

6        In two companion cases, Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166 (2003) and Ewing

7 v. California, 538 U.S. 11, 123 S.Ct. 1179 (2003), the Supreme Court provided guidance in applying

8 Eighth Amendment jurisprudence to California's Three Strikes law in habeas cases.  In Ewing, the

9 Supreme Court explained that while the constitutional principle of proportionality between crime and

10 sentence applies to noncapital sentences, "[t]he Eighth Amendment does not require strict

11 proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are

12 'grossly disproportionate' to the crime."  Ewing, 538 U.S. at 23 (citations omitted).  The gross

13 disproportionality principle applies "only in the 'exceedingly rare' and 'extreme' case."  Andrade,

14 538 U.S. at 73 (citations omitted).

15        Applying these standards, in Ewing, the Supreme Court rejected the defendant's claim that a

16 sentence of 25 years-to-life for stealing nearly $1,200 worth of golf clubs was "grossly

17 disproportionate" to his crime where the defendant had previously been convicted of three residential

18 burglaries and a robbery.  Ewing, 538 U.S. at 18.  Similarly, in Andrade the Court reversed the Ninth

19 Circuit's grant of habeas relief to a defendant sentenced to two consecutive 25 years-to-life sentences

20 for two petty theft convictions for stealing five videotapes worth less than $85, and four video tapes

21 worth less than $70, respectively.

22        In Andrade, the Supreme Court concluded that the state court decision upholding the

23 sentence was not "contrary to" the governing legal principles set forth in Supreme Court cases.

24 Andrade, 538 U.S. at 73-74.  The Supreme Court also held that the state appellate court did not

25 "unreasonably appl[y]" the gross disproportionality principle to Andrade's case since that principle

26 "gives legislatures broad discretion to fashion a sentence that fits within the scope of the

27 proportionality principle–the 'precise contours' of which 'are unclear.'"  Id., 538 U.S. at 75-77.

28

According to the Supreme Court, "it was not objectively unreasonable for the California Court of Appeal to conclude that these 'contours' permitted an affirmance of Andrade's sentence." Id.  In addition to Andrade and Ewing, the Supreme Court has also upheld a life sentence under Texas's habitual offender statute for obtaining $120 by false pretenses, Rummel v. Estelle, 445 U.S. 263, 200 S.Ct. 1133 (1980), and a life sentence *without the possibility of parole* for possession of cocaine. Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680 (1991).

In 2004, the Ninth Circuit held that a Three Strikes sentence of 25 years-to-life for a third offense of shoplifting a $199 VCR was cruel and unusual punishment.  Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004).  The Ramirez petitioner's criminal history consisted of two convictions for second-degree robbery as a result of a single guilty plea entered before the Three Strikes law was enacted.  In that case, the prosecution used two 1991 shoplifting convictions to charge the petitioner in 1995 with one count of petty theft with a prior theft-related conviction. (Cal. Pen. Code § 666). The jury found the two 1991 shoplifting convictions were strikes, the trial court refused to strike either of them, and sentenced the petitioner to 25 years-to-life. Ramirez . Castro, 365 F.3d at 756.

Prior to his third-strike sentence, the petitioner had never been sentenced to prison, and had been incarcerated only one time in the county jail. In finding the sentence unconstitutional, the Ninth Circuit determined that the state court unreasonably applied the gross proportionality principle to the "unique facts of Ramirez's case." Ramirez v. Castro, 365 F.3d at 774.

By contrast, in another 2004 case, the Ninth Circuit held that a Three Strikes sentence of 25 years-to-life for a third "wobbler" offense did not constitute cruel and unusual punishment, because the petitioner had a lengthy criminal history, had been incarcerated several times, and the strikes used to enhance the petitioner's sentence involved the threat of violence. Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004).

In light of this jurisprudence, the Court concludes that Petitioner's sentence here is not grossly disproportionate to the offense and therefore the Court must conclude that the sentence imposed in this case and affirmed by the state courts, though harsh, did not offend the Eighth Amendment.

///

Petitioner repeatedly seeks to minimize the gravity of his crime, i.e., possession of marijuana in prison, referring to the fact that he was found with less than an ounce of marijuana and that such a crime, if committed by a non-inmate, would be deemed minor.  His comparison fails, however, because Petitioner ignores the obvious fact that he is *not* a non-inmate.  Contrary to Petitioner's implicit assumption, felony possession of marijuana by a state inmate is not a minor offense, but rather is one that the State of California has deemed to have the potential to seriously jeopardize institutional security.  Estes v. Rowland, 14 Cal.App.4th 508, 538-539 (1993)("smuggling of contraband into California's prisons is a grave problem requiring unprecedented security procedures"); see also People v. Harris, 83 Cal.App.4th 371, 376 (2000).

Indeed, Petitioner's own counsel, at Petitioner's December 8, 1997 reconsideration of sentence hearing, admitted as much:

> ...[I]t's a serious crime and we all know that the presence of drugs, even small amounts and even relatively mild drugs such as marijuana have an unusually disproportionate effect on the orderly administration of prisoners in the prisons.  It's used as money.  It's used as a way of gaining favors and things of that nature, and for that reason it's a felony and it's to be, to be punished and to be punished severely enough to prevent or discourage trafficking of drugs in prison.

(Supp. CT and RT 26-27).

In Andrade, the U.S. Supreme Court upheld two consecutive 25 years-to-life sentences for stealing videotapes valued at less than $200, after convictions on two counts of petty theft.  Here, Petitioner received a 25 years-to-life sentence for possessing numerous balloons of marijuana while a state prison inmate, a crime that is clearly more serious in nature than the petty theft conviction at issue in Andrade.  As in Andrade, Petitioner was no first-time offender, and his sentence does not preclude parole. [3]

Beyond the instant offense, however, the Court must consider Petitioner's prior history, which is more extensive than in Ramirez, as well as his lengthy prison incarcerations and periods of parole and probation that span most of his adult life.  As the Supreme Court stated in Ewing, "[i]n

---

[3]  California Penal Code § 3041 provides that parole must be granted unless certain criteria, not present in this case, are met. § 3041 further provides that the California Board of Prison Terms must grant parole unless it determines that public safety requires a lengthier period of incarceration for the individual because of the gravity of the offense underlying the conviction. In re Rosenkrantz, 29 Cal. 4th 616, 654 (2002).

1   weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but

2   also his long history of felony recidivism." Ewing, 538 U.S. at 29.

3           Based on the record now before this Court, Petitioner's criminal history shows that prior to

4   the instant offense, Petitioner had been convicted of two serious "strike" felonies, including a 1991

5   conviction for robbery and a 1986 conviction for attempted residential burglary.  (Aug. Record, pp.

6   1-23).  Moreover, the probation report evidences a lengthy history of other felony convictions,

7   commencing in 1976 with a juvenile adjudication for burglary, and as an adult, convictions in 1977

8   and 1979 for burglary, convictions for grand theft in 1977, 1980, and 1989, and convictions in 1985

9   and 1987 for petty theft with a prior conviction.  (CT 187-188).

10          At the hearing to reconsider Petitioner's sentence, the trial court made the following

11  observation about Petitioner's lengthy criminal history:

12          The Court cannot, however, consider [the sentence] in a vacuum, and must take
            cognizance of Mr. Fall's lengthy record of 11 prior convictions for serious
13          misdemeanors and/or felonies.  Ten prior theft-related convictions.

14          His record indicates repeated grants of probation and repeated failures on probation
            going back a period of some 11 years with a juvenile adjudication for burglary,
15          followed by probation; followed by reoffending for burglary in 1977, a grant of
            probation; reoffending for theft, a grant of probation; reoffending for burglary, grant
16          of probation; reoffending for a grant of theft, grant of probation; reoffending for being
            under the influence of a controlled substance, a grant of probation; reoffending for
17          petty theft with prior conviction; grant of probation; reoffending for attempted first
            degree burglary, a prison sentence, parole; violation of parole with a reoffending for
18          petty theft with a prior, followed by a prison sentence; followed by another prison
            sentence for grand theft followed by another prison sentence for robbery.

19
            Repeatedly grants of probation have been unsatisfactory.  Increasing periods of
20          custodial time have been unsatisfactory in reforming Falls' conduct.

21          Indeed, he has a well, it's an understatement to say a well-established pattern of
            reoffending soon after release, and is before the Court having even been unable to
22          complete a prison perform [sic] without committing a new felony.

23          His out-of-prison criminal behavior appears to be becoming increasingly serious,
            progressing from purely property crimes to crimes of violence and threatened violence
24          such a robbery.

25  (12/8/97 RT 41-42).

26          Given Petitioner's extensive criminal history, spanning well over twenty years and including

27  numerous felony convictions of increasing severity and violence, including grand theft, robbery, and

28  burglary, his case is not "the rare case in which a threshold comparison of the crime committed and

1    the sentence imposed leads to an inference of gross proportionality." Harmelin, 501 U.S. at 1005.

2    Thus, Petitioner's prior criminal history can be distinguished from that of Ramirez, and does not

3    warrant habeas relief.  As was true in Ewing, Petitioner's sentence of 25 years-to-life is justified by

4    the State's public-safety interest in incapacitating and deterring recidivist felons, and is amply

5    supported by Petitioner's numerous convictions documenting his unstinting disregard for the law.

6    Ewing, 538 U.S. at 29-30.

7            In sum, Petitioner's sentence, when compared with his underlying offenses, does not violate

8    the Eighth Amendment's prohibition on cruel and unusual punishment.  Based on the foregoing, the

9    Court concludes that the state court's rejection of Petitioner's claim was neither contrary to nor an

10   unreasonable application of clearly established United States Supreme Court precedent.  Accordingly,

11   this claim must be denied.

12   **Ground Two**          **Petitioner's sentence of 25 years to life violates equal protection and due process in that it is much harsher than sentences for someone convicted of a simple drug possession offense.**

13

14           Petitioner contends that possession of marijuana in prison is no more serious than simple

15   possession of marijuana, but that he was not permitted to enter a drug treatment program authorized

16   under California's Proposition 36 or California Penal Code §§ 1000-1004, thus violating federal due

17   process and equal protections guarantees.  (Doc. 1, p. 5).  This is not a basis for federal habeas relief

18   and, even if it were, it must be rejected on its merits.

19           A.  **Due Process.**

20           Issues of state law sentencing errors generally are not cognizable on federal habeas review

21   unless the petitioner claims a deprivation of due process or equal protection due to the

22   misapplication of the sentencing law. Estelle v. McGuire, 502 U.S. 62, 67 (1991) (holding that "it is

23   not the province of a federal habeas court to reexamine state court determinations on state law

24   questions"); Featherstone v. Estelle, 948 F.2d 1497, 1500 (9th Cir. 1991);Miller v. Vasquez, 868 F.

25   2d 1116, 1118-19 (9th Cir. 1989) (refusing to address sentence enhancement claim); see Fetterly v.

26   Paskett, 997 F.2d 1295, 1300 (9th Cir. 1993).

27   ///

28

A criminal defendant is entitled to due process at sentencing. <u>Gardner v. Florida</u>, 430 U.S. 349, 358, 97 S.Ct. 1197 (1977). However, federal courts must defer to a state court's interpretation of state sentencing laws. <u>Bueno v. Hallahan</u>, 988 F. 2d 86, 88 (9th Cir. 1993). "Absent a showing of fundamental unfairness," a state court's misapplication of its own sentencing laws does not justify federal habeas relief." <u>Christian v. Rhode</u>, 41 F. 3d 461, 469 (9th Cir. 1994). As a threshold matter, the Court must determine whether Petitioner has alleged that his sentence is fundamentally unfair.

A showing of fundamental unfairness has been found under two circumstances. First, where a state court imposed a sentence in excess of state law. <u>Walker v. Endell</u>, 850 F. 2d 470, 476 (9th Cir. 1987); <u>see also</u>, <u>Marzano v. Kincheloe</u>, 915 F.2d 549, 552 (9th Cir. 1990) (guilty plea does not permit state court to impose a sentence in excess of state law despite agreement of defendant to sentence). Second, where a state court enhanced a sentence based on materially false or unreliable information or based on a conviction infected by constitutional error. <u>See</u> <u>United States v. Hanna</u>, 49 F.3d 572, 577 (9th Cir. 1995); <u>Walker</u>, 850 F. 2d at 477. Generally, a federal habeas court will not review a state sentence that is within statutory limits. <u>Id.</u> at 476.

Here, Petitioner does not allege that his prior "strike" convictions or his prior prison term enhancements were based on either materially false information or upon convictions infected by constitutional error. Nor has Petitioner asserted that the trial judge imposed a sentence in excess of state law. Rather, Petitioner has contended that the length of the sentence is so disproportionate to the nature of the offense, i.e., possession of a small amount of marijuana in prison, that it violates constitutional safeguards against cruel and unusual punishment and that California's sentencing laws violated federal due process because they do not provide for a less harsh punishment for conviction of possession of a drug in prison.

The Court has already addressed the former argument in the previous section, and need not repeat that analysis here. As to the latter argument, the court is unable to perceive any federal constitutional issue in California's decision not to provide a drug deferral option within its Three Strikes sentencing scheme. Accordingly, the Court does not find any cognizable federal question in this Ground Two upon which to grant habeas relief. <u>Estelle</u>, 502 U.S. at 67; <u>Miller v. Vasquez</u>, 868 F. 2d at 1118-19.

However, assuming, arguendo, that Petitioner states a federal claim, Petitioner is simply incorrect in asserting that California is mandated by due process concerns to provide a less onerous option than an indeterminate 25 year-to-life sentence for one convicted of possession of marijuana in prison.  In Ewing, 538 U.S. 11, the United States Supreme Court, discussing California's Three Strikes sentencing scheme, noted as follows:

> Throughout the States, legislatures enacting three strikes laws made a deliberate policy choice that individuals who have repeatedly engaged in serious or violent criminal behavior, and whose conduct has not been deterred by more conventional approaches to punishment, must be isolated from society in order to protect the public safety. *Though three strikes laws may be relatively new, our tradition of deferring to state legislatures in making and implementing such important policy decisions is longstanding.*
>
> Our traditional deference to legislative policy choices finds a corollary in the principle that the Constitution "does not mandate adoption of any one penological theory." [citation omitted]...
>
> When the California Legislature enacted the three strikes law, it made a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime.  Nothing in the Eighth Amendment prohibits California from making that choice.  To the contrary, our cases establish that "States have a valid interest in deterring and segregating habitual criminals." [citation omitted].

Ewing, 538 U.S. at 24-25 (emphasis supplied).

From the foregoing, it is patent that even if Ground Two stated a federal claim, federal deference to state sentencing schemes precludes this Court from concluding either that California cannot establish a harsher penalty for those convicted of drug possession in prison than those who possess such drugs outside of prison or that the state must provide less onerous alternatives than a Three Strikes sentence to one situated similarly to Petitioner.  Accordingly, the Court cannot conclude that the state court determination as to Petitioner's sentence was contrary to or an unreasonable application of clearly established federal law.

**B.  Equal Protection.**

For statutory challenges made on constitutional equal protection grounds, the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate government interest.  See City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 440, 105 S.Ct. 3249 (1985); Von Robinson v. Marshall, 66 F.3d 249, 251

(9th Cir.1995); <u>United States v. Harding</u>, 971 F.2d 410, 412 (9th Cir.1992).  A statutory sentencing scheme that does not disadvantage a suspect class or infringe upon the exercise of a fundamental right, as is the case here, is subject only to rational basis scrutiny.  <u>See</u> <u>Harding</u>, 971 F.2d at 412.   It can be disturbed only if the petitioner can prove "that there exist no legitimate grounds to support the classification."  <u>Id</u>. at 413 (citing <u>Minnesota v. Clover Leaf Creamery Co.</u>, 449 U.S. 456, 464 (1981)).

Here, Petitioner cannot establish that the classification to which he belongs is not based on legitimate grounds.  As discussed in the previous section, the State of California has a legitimate concern about controlling the possession of illegal drugs in its prisons.  <u>Estes,</u> 14 Cal.App.4th at 538-539; <u>see</u> <u>also</u> <u>Harris</u>, 83 Cal.App.4th at 376.  Also as mentioned, Petitioner's own counsel enumerated additional reasons why the possession of illegal drugs in a prison poses significant security concerns for state prison officials.  Given those concerns, making possession of all illegal drugs a felony is based upon legitimate policies and concerns.

California has a rational basis upon which to distinguish between the class of defendants, such as Petitioner, who possessed a controlled substance while in prison, and the class of defendants who possessed such controlled substances outside of prison.  Thus, the state court decision was not contrary to nor an unreasonable application of clearly established federal law.  Petitioner is therefore not entitled to federal habeas relief on this claim.

**Ground Three**          **The trial court abused its discretion by refusing to dismiss a prior "strike" conviction**

### A.  Failure to Present a Federal Question.

As previously stated, the basic scope of habeas corpus is prescribed by statute.  Subsection (c) of Section 2241 of Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless he is "in custody in violation of the Constitution."  28 U.S.C. § 2254(a) states:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to a judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.*

(emphasis added).  <u>See also</u> Rule 1 to the Rules Governing Section 2254 Cases in the United States District Court.  "[F]ederal habeas corpus relief does not lie for errors of state law." <u>Estelle</u>, 502 U.S.

1    at 67, quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102 (1990).  "[I]t is not the

2    province of a federal habeas court to reexamine state-court determinations on state-law questions."

3    <u>Estelle</u>, 502 U.S. at 67-68.  "A state court's procedural or evidentiary ruling is not subject to federal

4    habeas review unless the ruling violates federal law, either by infringing upon a specific federal

5    constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial

6    guaranteed by due process."  <u>Walters v. Maass</u>, 45 F.3d 1355, 1357 (9th Cir.1995); <u>see</u> <u>Pulley v.</u>

7    <u>Harris</u>, 465 U.S. 37, 41, 104 S.Ct. 871 (1984); <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919-20 (9th

8    Cir.1991); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir.1985).  Therefore, "a federal court

9    cannot disturb on due process grounds a state court's decision to admit evidence unless the admission

10   of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair."

11   <u>Walters</u>, 45 F.3d at 1357.

12         Petitioner's contention that the trial court abused its discretion in refusing to dismiss a prior

13   "strike" conviction fails to present a federal question.  Petitioner does not assert a violation of the

14   Constitution or federal law.  Petitioner fails to cite any relevant federal authority for his arguments

15   that would raise what is obviously a state law issue to a federal one.[4]  It thus appears to the Court that

16   Petitioner's entire claim is premised on a violation of California law.  Consequently, Petitioner's

17   claim is not cognizable on federal habeas review and must be denied.  Nevertheless, the Court will

18   also address the claim as it is without merit.

19         **B.  <u>Review of Claim.</u>**

20         Here, Petitioner has failed to demonstrate that the trial judge's decision not to dismiss either

21   of the prior "strike" convictions was arbitrary or irrational.  From the record before this Court, it is

22

23         [4]To be precise, Petitioner does cite two federal cases. (Doc. 1, p. 22). The first, <u>Riggs v. California</u>, 525 U.S. 1114,
24   119 S.Ct. 890 (1999), is not a substantive decision at all but rather an order denying certiorari by the U.S. Supreme Court
     in which several members of the Supreme Court expressed concern about the harshness of California's Three Strikes law as
25   applied in that case.  Those concerns, as discussed in Ground One, were subsequently addressed and answered contrary to
     Petitioner in <u>Andrade</u>.  Petitioner's second federal case, <u>Terrebonne v. Butler</u>, 848 F.2d 500 (5th Cir. 1988), involved a
26   defendant convicted of supplying federal agents with 22 bundles of heroin and sentenced to life without the possibility of
     parole.  Terrebonne filed a federal habeas petition challenging the severity of his sentence, which the district court denied
27   and the Fifth Circuit upheld. In so doing, the 5th Circuit concluded that Terrebonne's crime was not minor, that the country
     faced a serious drug problem, and that "[i]f Louisiana's hands are to be tied in the face of the present assault on its society
28   and citizens by the drug menace, some other Court will have to do it. We decline to do so." <u>Id.</u> at 507. From this, it is not
     readily apparent to the Court how the case supports Petitioner in any way.  Indeed, it appears to do exactly the opposite.

1  clear that the trial judge was aware of the severity of the sentence, but that he also realized that he

2  could not merely strike the prior convictions simply because he did not agree with the length of the

3  sentence.  See Romero, 13 Cal.4th at 531, quoting People v. Dent, 38 Cal.App.4th 1726, 1731 (1995)

4  (a court fails to act "properly if 'guided solely by a personal antipathy for the effect that the three

5  strikes law would have on [a] defendant, . . . .'").

6         In People v. Williams, 17 Cal.4th 148 (1998), the California Supreme Court  clarified its

7  Three Strikes jurisprudence by explaining the factors a trial court should consider in exercising its

8  discretion under Romero:

9         "In ruling whether to strike or vacate a prior serious and/or violent felony conviction
          allegation or finding under the Three Strikes law...the court in question must consider
10        whether, in light of the nature and circumstances of his present felonies and prior
          serious and/or violent felony convictions, and the particulars of his background,
11        character, and prospects, the defendant may be deemed outside the scheme's spirit, in
          whole or in part, and hence should be treated as though he had not previously been
12        convicted of one or more serious and/or violent felonies."

13  Williams, 17 Cal.4th at 161.

14        In the instant case, given Petitioner's extensive criminal record and his apparent inability to

15  conform his behavior to societal norms, the trial court correctly rejected any contention that

16  Petitioner was somehow "outside the scheme's spirit."   To the contrary, it is apparent to this Court

17  that Petitioner is *precisely* the type of career recidivist criminal at whom California's Three Strikes

18  sentencing scheme is directed.  It is also clear from this record of the December 8, 1997 hearing on

19  the Romero issue, that the trial court did in fact consider Petitioner's request to strike, and his

20  arguments in support thereof, as well as the probation officer's report.  If the trial court considered

21  these items, it was adequately and well-informed regarding Petitioner's background and record.

22  Thus, Petitioner clearly received the "individualized consideration" California requires.  See People

23  v. Garcia, 20 Cal.4th 490, 500 (1999).[5]

24        Under all of these circumstances, Petitioner has failed to show the trial court's decision to be

25  arbitrary or irrational or that the state court judgment was contrary to or an unreasonable application

26  _____

27        [5]The trial court acknowledged on the probation report itself that it had read and considered the
       report's contents.  (CT of 35(e) Letter, p. 16).  The trial court also had before it a variety of personal
28     letters written by friends and family of Petitioner, urging the court to avoid a Three Strikes sentence.
       (Id. at pp. 17-34).

of clearly established federal law.  Hence, the claim must be denied.

**Ground Four          Petitioner's due process rights were violated when the trial court found the attempted burglary conviction to be a "strike."**

Petitioner appears to contend that insufficient evidence was presented to establish that his 1986 guilty plea for attempted residential burglary was in fact a predicate "strike" conviction.  (Doc. 1, p. 23 -32).  Petitioner maintains that attempted burglary is not a strike because it does not constitute a serious or violent felony, that the abstract of judgment and other documents submitted to the trial court do not establish that the crime was a strike, and that under the "least adjudicated elements" theory, the 1986 prior conviction should not be used to enhance his sentence.  (Id.). None of these contentions has any merit.

On May 14, 1986, Petitioner pleaded guilty to one count of attempted residential burglary, Cal. Pen. Code, §§ 664 and 459, in the Fresno County Superior Court.  (Aug. CT 14-23).  First, burglary of a residence is burglary in the first degree under California law.  Pen. Code § 460(a). Second, under California Penal Code §§ 1192.7(c)(18) and (39), any attempted burglary in the first degree is a "serious" felony.  Last, it is beyond contention that California's Three Strikes sentencing scheme is triggered by any conviction for a felony when the defendant also has two prior "serious" or "violent" felony convictions.  E.g., People v. Hazelton, 14 Cal.4th 101, 108 (1996); Cal. Pen. Code, § 667(c); § 1170.12(a), (b).

Thus, Petitioner's argument that a conviction for attempted first degree burglary is not a strike is specious, is unsupported by any legal authority, and is directly contradicted by the plain language of California's Penal Code.

Likewise, Petitioner's contention that insufficient evidence was presented to establish the 1986 conviction is untenable.  The law on sufficiency of the evidence is clearly established by the United States Supreme Court.  Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781(1979), the test on habeas review to determine whether a factual finding is fairly supported by the record is as follows:

> "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

1   <u>Jackson</u>, 443 U.S. at 319; <u>see also</u> <u>Lewis v. Jeffers</u>, 497 U.S. at 781.  Thus, only if "no rational trier

2   of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to

3   habeas relief.  <u>Jackson</u>, 443 U.S. at 324.   Sufficiency claims are judged by the elements defined by

4   state law.  <u>Id.</u> at 324, n. 16.[6]

5           It appears to be an open question in the Ninth Circuit whether AEDPA adds a second level of

6   deference to this standard, so that a federal habeas petitioner may obtain relief only by demonstrating

7   that the state court's adjudication on the merits of the claim involved an unreasonable application of

8   <u>Jackson's</u> "no rational trier of fact" standard.  <u>See</u> <u>Garcia v. Carey</u>, 395 F.3d 1099, 1102 (9th Cir.

9   2005); <u>Chein v. Shumsky</u>, 373 F.3d 978, 983 (9th Cir. 2004)(en banc).  However, the Court here

10  need not address that issue because the Court reaches the same result whether the record is reviewed

11  directly under <u>Jackson</u> or under the more deferential filter of the AEDPA standard.  <u>See id.</u>

12          This Court must presume the correctness of the state court's factual findings. 28 U.S.C.

13  § 2254(e)(1); <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 459, 106 S.Ct. 2616 (1986).  This presumption of

14  correctness applies to state appellate determinations of fact as well as those of the state trial courts.

15  <u>Tinsley v. Borg</u>, 895 F.2d 520, 525 (9th Cir.1990).  Although the presumption of correctness does

16  not apply to state court determinations of legal questions or mixed questions of law and fact, the

17  facts as found by the state court underlying those determinations are entitled to the presumption.

18  <u>Sumner v. Mata</u>, 455 U.S. 539, 597, 102 S.Ct. 1303 (1982).

19          Here, the trial court had evidence, in the form of certified records of the California

20  Department of Corrections and Rehabilitation, regarding the 1986 conviction for attempted first

21  degree burglary, including a transcript of the hearing at which Petitioner pleaded guilty to the charge

22  of attempted first degree burglary and conceded the factual basis for the charge as recited by the

23  prosecutor.  (Aug. CT 23-32).  Neither Petitioner or his trial counsel appeared to dispute this fact.

24  Trial counsel readily acknowledged that the conviction was a strike.  (Aug. CT 27).   And indeed,

25  Petitioner does not appear to challenge the fact of this conviction either, but rather its legal

26  significance as a potential "strike."  The legal effect of the conviction as an enhancement has already

27

28          [6]In reviewing sufficiency of evidence claims, California courts expressly follow the standard enunciated in <u>Jackson</u>. <u>See</u> <u>People v. Johnson</u>, 26 Cal.3d 557, 575-578 (1980); <u>see also</u> <u>People v. Thomas</u>, 2 Cal.4th 489, 513 (1992).

1    been addressed.  Regarding the evidence supporting the trial court's finding, therefore, it simply

2    cannot be maintained that no reasonable juror could have concluded that Petitioner had been

3    convicted in 1986 of the attempted first degree burglary charge.  Under those circumstances,

4    sufficient evidence was presented to support the finding.

5         Finally, Petitioner's reliance on the "least adjudicated elements" doctrine is entirely

6    misplaced.  In California, when considering whether prior convictions are "strikes," the trial courts

7    are bound "by the rule that a record of a prior conviction establishes only the 'least adjudicated

8    elements' of the offense."  People v. Rodriguez, 17 Cal.4th 253, 261 (1998); People v. Bueno, 143

9    Cal.App.4th 1503, 1508 (2006).  Thus, on an appellate challenge to a finding that a prior conviction

10   was a strike, and where the prior conviction is for an offense that can be committed in multiple ways,

11   one or more of which would not qualify as a strike, and if it cannot be determined from the record

12   that the offense was committed in a way that would make it a strike, a reviewing court must presume

13   the offense is not a strike.  People v. Watts, 131 Cal.App.4th 589, 595 (2005).

14        For example, in Rodriguez, the trial court found true a strike allegation based on a prior

15   conviction for assault (Cal. Pen. Code § 245(a)(1)), which had been entered pursuant to a guilty plea.

16   The abstract of judgment was the only evidence presented to prove this conviction was a strike.  The

17   California Supreme Court held that the evidence, standing alone, was insufficient to establish that the

18   conviction was a strike because only those assaults in which the defendant "personally inflicted great

19   bodily injury on any person, other than an accomplice, or...personally used a firearm" or "personally

20   used a dangerous or deadly weapon," qualified as strikes.  17 Cal.4th at 261.  Thus, using the least

21   adjudicated elements contained in the abstract of judgment, i.e., the fact of conviction for assault

22   itself, the court could not determine that the prior conviction was in fact a strike.  Id.

23        Here, no such ambiguity exists.  As mentioned, first degree (residential) burglary, and

24   attempted first degree burglary are serious felonies in California that qualify as strikes.  While it is

25   true that a *second* degree (i.e., non-residential) burglary would not qualify by itself as a strike, there

26   is no suggestion here, and no contention by Petitioner or proof, that Petitioner's 1986 conviction was

27   for anything other than attempted *first* degree residential burglary.  No ambiguity exists that this

28   ///

conviction is a strike. Therefore, the "least adjudicated elements" rule has no application here.

For the foregoing reasons, the state court adjudication of these issues was not contrary to or an unreasonable application of clearly established federal law.  Thus, Ground Four must be rejected.

**Ground Five**          **Petitioner has a state and federal due process right to be put in a drug treatment program.**

Petitioner next contends that the trial court misconstrued state law in failing to sentence him to a drug treatment program.  (Doc. 1, p. 28).  Petitioner maintains that the court erroneously believed it could not sentence Petitioner to a drug treatment program if Petitioner was subject to the Three Strikes law.  (Id.).  Petitioner is again mistaken.

Preliminarily, this is not a federal issue and, moreover, there is no clearly established federal law which the state court's determination could be considered either contrary to or an unreasonable application of.  Issues of state law sentencing errors generally are not cognizable on federal habeas review unless the petitioner claims a deprivation of due process or equal protection due to the misapplication of the sentencing law. See Estelle, 502 U.S. at 67(holding that "it is not the province of a federal habeas court to reexamine state court determinations on state law questions"); Fetterly, 997 F.2d at 1300; Featherstone, 948 F.2d at 1500; Miller v. Vasquez, 868 F. 2d at 1118-19 (refusing to address sentence enhancement claim).

A criminal defendant is entitled to due process at sentencing.  Gardner v. Florida, 430 U.S. 349, 358, 97 S.Ct. 1197 (1977).  However, federal courts must defer to a state court's interpretation of state sentencing laws.  Bueno v. Hallahan, 988 F. 2d 86, 88 (9th Cir. 1993).  "Absent a showing of fundamental unfairness," a state court's misapplication of its own sentencing laws does not justify federal habeas relief." Christian v. Rhode, 41 F. 3d 461, 469 (9th Cir. 1994).

Petitioner has made no such showing.  When a defendant who has been convicted of a felony is shown to have suffered two previous serious or violent felony convictions, California's Three Strikes law provides that "[p]robation for the current offense shall not be granted...."  Val. Pen. Code § 667(c)(2).  Moreover, in such cases, "[t]here shall not be a commitment to any other facility other than the state prison. *Diversion shall not be granted nor shall the defendant be eligible for commitment to the California Rehabilitation Center....*"  Cal. Pen. Code § 667(c)(4). (Italics

1   supplied.) [7]   Thus, the plain language of the statute indicates clearly that the trial court had no

2   discretion to sentence Petitioner to a drug rehabilitation program or, indeed, to impose any other

3   sentence than one to state prison.

4          Petitioner has not shown that the trial court misinterpreted California's sentencing laws in

5   sentencing him to state prison instead of a drug rehabilitation program; as discussed above, the trial

6   court imposed the only sentence possible under the circumstances.  Moreover, in light of the

7   previous discussion regarding the proportionality and fairness of Petitioner's lengthy sentence, it is

8   clear that no fundamentally unfair misapplication of the state's laws occurred in this case.  See

9   Christian, 41 F. 3d at 469.  Accordingly, the state court's adjudication of this issue was not contrary

10  to nor an unreasonable application of clearly established federal law.

11  **Ground Six              Ineffective assistance of appellate counsel.**

12          Petitioner contends that he did not receive the effective assistance of counsel on appeal.

13  Petitioner argues that appellate counsel was ineffective in failing to: (1) raise "mitigating facts" in

14  Petitioner's appeal; (2) raise ineffective assistance of trial counsel in the latter's failure to advise

15  Petitioner of his "rights to discovery, rights to investigation, right to call witness, rights to having a

16  attorney and client interview..., rights to have any related subject matter research and rights to

17  retrieve all relevant documents or eyewitness...."; (3) raise "breach of fiduciary duty" by trial counsel

18  in not raising breach of the plea agreement; (4) object to "none waiver statutes added outside the

19  original judicial proceeding, and off the direct consequence waiver records"; (5) raise "mitigate

20  defense against insufficient evidences" that Petitioner was a recidivist; and (6) raise ineffective

21  assistance because trial counsel "failed to raise an legal defense against the district attorney failing to

22  raise sufficient relate evidence...."  (Doc. 1, pp. 33-34).

23          Although many of these issues are nearly unintelligible to the Court, after making a

24

25          [7]The California Rehabilitation Center ("CRC") is the facility, under the jurisdiction of the Department of Corrections
26  and Rehabilitation, whose purpose "is not only treatment and rehabilitation" of drug addicts but also "'control' and
    'confinement' of persons committed thereto." People v. Valenzuela, 116 Cal.App.3d 798, 807 (1981); see Cal. Welf. & Inst.
27  Code §§ 3000; 3001; 3301. Petitioner's conviction and sentence pre-dated the 2000 enactment of Proposition 36, California's
    new system of drug treatment deferral.  See  Pen. Code §§ 1210; 1210.1; 3063.1; see  e.g., People v. Superior Court, 146
28  Cal.App.4th 518 (2007).  Thus, the only drug treatment option available to Petitioner at the time of his conviction was the
    CRC, an option prohibited by California Penal Code § 667(c)(4).

1   concerted effort to liberally construe these claims of ineffective assistance of appellate counsel, the

2   Court concludes that they are all without merit.

3      **A.  The Standard For Ineffective Assistance of Counsel**.

4      In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court

5   must consider two factors.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984);

6   Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's

7   performance was deficient, requiring a showing that counsel made errors so serious that he or she

8   was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at

9   687.  To establish this, the petitioner must show that counsel's representation fell below an objective

10  standard of reasonableness.  Id. at 688.  The petitioner must identify counsel's alleged acts or

11  omissions that were not the result of reasonable professional judgment considering the

12  circumstances.  Id.; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial

13  scrutiny of counsel's performance is highly deferential, and a court indulges a strong presumption

14  that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland,

15  466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

16     Second, a petitioner must show prejudice, i.e., whether counsel's errors were so egregious as

17  to deprive him of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688, 694.  To

18  establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's

19  unprofessional errors, the result of the proceeding would have been different.  A reasonable

20  probability is a probability sufficient to undermine confidence in the outcome."  Id.; Williams v.

21  Taylor, 529 U.S. 362, 391, 120 S.Ct. 1495 (2000).   In so doing, the Court must also evaluate

22  whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.

23  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir.

24  1994).

25     The Court does not need to consider the two elements in any particular order, nor does the

26  Court need to consider both if the showing on either one is insufficient.  Strickland, 466 U.S. at 697.

27  A court need not determine whether counsel's performance was deficient before examining the

28  prejudice suffered by the petitioner as a result of the alleged deficiencies.  Id.   The object of an

1   ineffectiveness claim is not to grade counsel's performance.  Id.  "If it is easier to dispose of an

2   ineffective claim on the ground of lack of sufficient prejudice, which we expect will often be so, that

3   course should be followed."  Id.        With these principles in mind, the Court now turns to an

4   analysis of Petitioner's claims of ineffective assistance of appellate counsel.

5           **B.  <u>Petitioner Was Not Denied the Effective Assistance of Counsel</u>**.

6           With regard to appellate counsel's failure to raise mitigating facts on appeal, Petitioner is

7   mistaken.  Appellate counsel discussed in great detail the factors that supported a conclusion that

8   Petitioner's sentence was cruel and unusual, including the disproportionality of the sentence as

9   applied to Petitioner, the disproportionality of the sentence when compared with more serious

10  crimes, the disproportionality of the sentence compared with recidivist punishments in other

11  jurisdictions, and the fact that the sentence itself of twenty-five years to life for possession of

12  marijuana in prison "shocks the conscience."  (Doc. 14, Exh. C.)  These appellate arguments were

13  well-conceived, well-researched, and supported by ample legal authority.  In all respects, appellate

14  counsel performed at the level of a reasonable and competent appellate attorney in presenting

15  Petitioner's case in the best possible light.  His only flaw, apparently, was that he was unsuccessful, a

16  fact that does not, in itself, implicate the Sixth Amendment.

17          Petitioner's second ground is that appellate counsel failed to raise ineffective assistance of

18  trial counsel for failure to advise Petitioner of various rights during the trial process.  This contention

19  suffers from two infirmities.  First, there is nothing in the present record before this Court to support

20  Petitioner's contention other than his own allegations.  The record itself contains nothing to suggest

21  either that trial counsel failed to properly advise Petitioner or that Petitioner himself was operating

22  without a full understanding of his rights.  Second, even assuming this were true, Petitioner has

23  shown no prejudice.  While it is always preferable that a criminal defendant be fully aware of his

24  rights, a less-than-perfect understanding of his rights, even if supported by the record, does not

25  establish that trial counsel's performance was deficient or, more importantly, that there is a

26  reasonable probability that, but for counsel's deficiencies, the result in this case would have been

27  different.  See Williams v. Taylor, 529 U.S. at 391.

28          In this Report and Recommendation, the Court has discussed and rejected the various

1    sentencing issues that comprise the remaining claims by Petitioner of ineffective assistance of

2    appellate counsel for failure to raise the purported ineffectiveness of trial counsel regarding these

3    sentencing issues.  In light of the Court's determination that none of these sentencing issues has any

4    substantive merit, it seems evident, *ipso facto*, that trial counsel's performance could <u>not</u> be deficient

5    for failing to adequately raise these sentencing issues on direct appeal; *ergo*, appellate counsel could

6    likewise not be ineffective for failing to raise the purported ineffectiveness of trial counsel as to these

7    same issues.  <u>Strickland</u>, 466 U.S. at 687; 688; 694.

8    **Ground Seven**          **Petitioner's due process rights were violated by the enhancement of his
                              sentence with a prior conviction resulting from a plea agreement in that the**

9                            **plea agreement did not provide for a subsequent enhancement.**

10        Petitioner contends that the prosecutor and the state court violated his 1986 plea agreement,

11   and therefore Petitioner's due process rights, by using the 1986 conviction to enhance his current

12   sentence.  As discussed above, on May 14, 1986, Petitioner pleaded guilty to one count of attempted

13   residential burglary, Cal. Pen. Code, §§ 664 and 459, in the Fresno County Superior Court, a

14   conviction later used as a predicate "strike" to enhance Petitioner's sentence in the instant case.

15   Petitioner contends that when he pled guilty in 1986, he was unaware that the conviction could be

16   used to enhance future sentences, and would not have accepted the plea if he had known.  (Doc. 1, p.

17   Petitioner even contends that the government, the state court, and the prosecutor committed fraud

18   "by alleging recidivism statute(s) application was apart of the condition agreed upon within a

19   specific performance plea agreement...." (Doc. 1, p. 58).  The Court construes this to mean that the

20   state committed fraud by using the 1986 plea agreement in a manner not anticipated by Petitioner at

21   the time he entered his plea.

22        To the extent that Petitioner argues that the alleged breach renders his current sentence

23   unconstitutional, his claim must fail.  When a plea agreement rests in any significant degree on a

24   promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or

25   consideration, such promise must be fulfilled.  <u>Santobello v. New York</u>, 404 U.S. 257, 22, 92 S.Ct.

26   495 (1971).  Here, there is no indication that any promise *not* to use the 1986 conviction was made

27   during the plea negotiations, nor does Petitioner make any such allegation.  Although Petitioner

28   implies that the prosecutor understood, as did Petitioner, the terms of the plea bargain involved only

1   the conviction and sentence for the 1986 offense, it in no way follows that the prosecutor *made a*

2   *promise* not to use the 1986 conviction to enhance a future sentence.  Accordingly, as there is no

3   basis for finding that such a promise was included in the 1986 plea agreement, the agreement was

4   not violated by virtue of the current enhancement.  Moreover, and contrary to the assertions implicit

5   in Petitioner's argument, the sentence imposed under Three Strikes is <u>not</u> additional punishment for

6   the <u>prior</u> convictions, but rather a stiffened penalty for the latest crime.  <u>See Monge v. California</u>,

7   524 U.S. 721, 728, 118 S.Ct. 2246 (1998).

8        To the extent that Petitioner alleges that he had no knowledge at the time of his 1986 plea of

9   the possibility that it could later be used to enhance a sentence, or that some kind of formal waiver by

10  Petitioner was required to make such a use valid, his claim must also fail.  Due process requires that

11  a defendant be informed of all the *direct* consequences of a guilty plea.  <u>Brady v. United States</u>, 397

12  U.S. 742, 749, 90 S.Ct. 1463 (1970).  There is no due process violation where a trial court fails to

13  inform the defendant of *collateral* consequences, such as the potential for enhancement in the future.

14  <u>United States v. Garrett</u>, 680 F.2d 64, 65-66 (9th Cir. 1982).  Thus, Petitioner's lack of knowledge

15  that the 1986 conviction could later be used to enhance a future sentence does not violate due

16  process.

17       In this same regard, Petitioner's suggestion that he only agreed to the factual basis recited at

18  the change of plea hearing, and not to any potential enhancement of a later conviction that might

19  result from that conviction, is also unavailing.  The transcript of the change of plea, proffered by

20  Petitioner himself, establishes that Petitioner acknowledged the factual basis recited by the

21  prosecutor, which included Petitioner's attempt to burglarize a residence with the intent to commit

22  larceny within.  As mentioned earlier, under California Penal Code §§ 1192.7(c)(18) and (39), any

23  attempted burglary in the first degree is a "serious" felony.  California's Three Strikes sentencing

24  scheme is triggered by any conviction for a felony with two prior "serious" or "violent" felony

25  convictions.  Cal. Pen. Code, § 667.5(c).

26       In other words, at the time of his change of plea, Petitioner acknowledged the factual basis

27  for the very crime that California has identified as a predicate felony for Three Strikes purposes.  As

28  discussed previously, the Constitution requires that Petitioner need only be advised of the direct

1  consequences of his plea. Therefore, Petitioner cannot claim that his acknowledgment of only the

2  limited factual basis somehow precludes use of that conviction now under the Three Strikes scheme.

3  Accordingly, the state court's decision was neither contrary to nor an unreasonable application of

4  clearly established federal law.[8]  Petitioner's claim must be denied.

5                                    **RECOMMENDATION**

6          Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus

7  (Doc. 1), be DENIED.

8          This Report and Recommendation is submitted to the United States District Court Judge

9  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the

10 Local Rules of Practice for the United States District Court, Eastern District of California.  Within

11 twenty (20) days after being served with a copy of this Report and Recommendation, any party may

12 file written objections with the Court and serve a copy on all parties.  Such a document should be

13 captioned "Objections to Magistrate Judge's Report and Recommendation."  Replies to the

14 Objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail)

15 after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to

16 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified

17 time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153

18 (9th Cir. 1991).

20 IT IS SO ORDERED.

21 Dated:   **February 9, 2007**                              **/s/ Theresa A. Goldner**
   **j6eb3d**                                    UNITED STATES MAGISTRATE JUDGE

---

26 [8]To the extent that Petitioner's state habeas petition and the brief attached to his federal petition could be read as
27 raising due process issues regarding Petitioner's lack of notice of the subsequent enhancing potential of his 1986 plea and
   lack of any waiver by Petitioner of his rights regarding its use (Doc. 1, p. 2), the Court rejects those arguments for the same
28 reasons set forth in this section.  The use of the 1986 conviction as an enhancement in a different case ten years later is a
   collateral consequence that did not require any "notice" to or "waiver" by Petitioner.